IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SEANRYAN MURPHY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 5:19-cv-01192-J |
| TOYOTA MOTOR CORPORATION, | ) |
| a foreign corporation, and | ) |
| | ) |
| TOYOTA MOTOR SALES U.S.A., INC., | ) |
| a foreign corporation, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' RENEWED MOTION FOR JUDGMENT
AS A MATTER OF LAW,
AND OPENING BRIEF IN SUPPORT**

Defendants move this Court for judgment as a matter of law (JMOL) pursuant to Fed. R. Civ. P. 50(a). In support of this motion, Defendants show this Court as follows:

**INTRODUCTION AND SUMMARY**

Plaintiff cannot prove an essential element of his claim for manufacturer's products liability – **that Plaintiff sustained personal injuries directly caused by a defect in the product**. Under Oklahoma, a product liability plaintiff must prove the following essential elements:

1

Instruction No. 12.1
MANUFACTURERS' PRODUCTS LIABILITY- ELEMENTS

A party claiming damages under Manufacturers' Products Liability has the burden of proving each of the following:

1. [Defendant] [manufactured/sold/leased] the [description of product];

2. [Defendant] was in the business of [manufacturing/selling/leasing] such products;

3. The [description of product] was defective and because of the defect, the [description of product] was unreasonably dangerous to a person [or to the property of a person] who uses, consumes, or might be reasonably expected to be affected by the [description of product];

4. The [description of product] was defective at the time it was [manufactured/sold/leased] by [Defendant] or left [his/her/its] control;

5. [Plaintiff] was a person who used, consumed, or could have reasonably been affected by the [description of product];

6. [Plaintiff] sustained [personal injuries] [and/or] [damage to property] directly caused by the defect in the [description of product].

*Comments*

The leading case in Oklahoma on manufacturers' products liability is *Kirkland v. General Motors Corp.*, 521 P.2d 1353 (Okla. 1974). In *Waggoner v. Town & Country Mobile Homes, Inc.*, 808 P.2d 649 (Okla. 1990), the Oklahoma Supreme Court held that "in Oklahoma no action lies in manufacturers' products liability for injury only to the product itself resulting in purely economic loss." 808 P.2d at 653. However, where there are also personal injuries or damages to other property, damages for injury to the product itself are recoverable under a products liability theory. *Dutsch v. Sea Ray Boats, Inc.*, 845 P.2d 187, 193-94 (Okla. 1992).

OUJI-Civ. No. 12.1

At the conclusion of all the evidence, Plaintiffs cannot prove the fourth and sixth elements in this case. First, there is no scientifically-reliable evidence of a defect in this case (Element 4). Second, there is no nexus between the claimed defect (testified to by Plaintiff's expert William Munsell), and the mechanism of the paralyzing injury (testified to by Plaintiff's expert Mariusz Ziejewski) (Element 6). Simply put, there is no evidence to connect the alleged defect to Plaintiff's injury.

Plaintiff has two liability experts in this case: (1) William Munsell – seat design; and (2) Mariusz Ziejewski - accident reconstruction/biomechanics. After serving an expert report broadly suggesting that the entire 2003 Toyota Matrix was defective: "The Toyota

2

Matrix is defective and unreasonably dangerous,"[1] Munsell narrowed his description of the defect in his sworn deposition testimony. Although Munsell has conceded that: (1) there is no defect in the driver's seat, and (2) there is no defect in the second row seat, he maintains that the seats "interact in a way that undermines the intent of the design of the front seat." [Ex. 1: Munsell Dep. at p. 70, ln. 23-25.] Specifically, he claimed that the interaction caused deformation to the driver seat back that "causes it to have a **reduction in strength** because of that deformation." [*Id.* at p. 71, ln. 21-22.]

Munsell's testimony at trial was in accord. Munsell acknowledged on direct examination that that the driver's seat did not break:

> Q. Did this one fracture?
> A. No.

[Ex: 2, Munsell Trial Testimony at p. 14, ln. 16-17.] He testified there was no defect in the driver's seat; there was no defect in the second row folding seat; and that there was no defect in the fold-down seat. [*Id.* at 48, ln. 7-17.] He testified that the alleged defective condition occurred, during the accident, when the head restraint for the second row seat, which was folded down, "punches the back of this [driver's] seat." [*Id.* at p. 7, ln. 14 – p. 8, ln. 11.] He continued that this, in turn, deforms the structure on the right side of the driver's seat back. [*See id.*] This, Munsell, posited "drops the strength on that side of the seat by 50 percent." [*Id.*] Mr. Munsell further testified:

> A.   And then above that where it's – that cross-section has been buckled and squeezed and lost 50 percent of its strength, that's why we get the big angle backwards when Mr. Murphy does not load the seat.

---

[1] *See* B. Munsell Rpt., DKT. No. 67.7 at ECF p. 6 (April 4, 2022).

*Id.* at 31, 2-5.

However, this allegedly defective condition espoused by Munsell – the claimed loss of strength of the driver's seat back – is not what Plaintiff's biomechanic, Ziejewski, claimed caused Mr. Murphy's injuries. In fact, Ziejewski claimed just the opposite: instead of a loss of strength in the driver's seat back, intrusion that pushed the second-row seatback into the driver's seat "resulted in minimum rotation of the driver's seatback." [Ex. 3: M. Ziejewski Rpt. at p. 16 (Apr. 4, 2022).] Ziejewski's testimony at trial was in accord. He testified as follows:

> Q . . . The conclusion that you made in your report, Doctor, was that the combined intrusion that pushed the second row seatback in the driver's seat with the upward, inward and rearward motion of the driver resulted in minimum rotation of the
> driver's seatback, right?
> A Yes.
> Q That's your conclusion, Doctor?
> A Yes, it is.
> Q And that hasn't changed, has it?
> A No.

[Ex: 4: Ziejewski Trial Testimony at p. 158, ln. 12-21.] Moreover, Ziejewski testified in redirect examination in question by Plaintiff's counsel: "In my opinion, his body didn't move more than inch or two [sic] up for the break to occur, and geometrically, it fit." [*Id.* at 183, ln. 18-19.]

In other words, the alleged defect suggested by Mr. Munsell – reduction of strength in the driver's seat back – had nothing to do with Mr. Murphy's paralyzing injury which Plaintiff's biomechanic say was caused by "minimum rotation of the driver's seatback."

4

Consequently, and as demonstrated below, Defendants respectfully submit that this Court should grant Defendants judgment as a matter of law.

As a matter of law, the opinions of Plaintiff's two liability experts cannot support a judgment for Plaintiff in this case. At the conclusion of Plaintiff's case-in-chief, Plaintiff has not demonstrated that he sustained personal injuries directly caused by a defect in the product.

## Standard of Review

"A party is entitled to JMOL only if the court concludes that all of the evidence in the record reveals no legally sufficient evidentiary basis for a claim under the controlling law." *ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 771 (10th Cir.2011) (brackets and ellipsis omitted). Where the "evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion" it is error to deny a motion for JMOL. *Id.* at 772 (ellipsis omitted).

## ARGUMENT AND AUTHORITIES

### I. THERE IS NO SCIENTIFICALLY RELIABLE EXPERT EVIDENCE FROM WHICH THE JURY COULD FIND A DEFECT IN THE 2003 TOYOTA MATRIX

At the close of Plaintiff's case-in-chief, there is no competent expert opinion testimony identifying a defect in the driver's seat or in the second-row seat. Mr. Munsell agreed the driver seat and the second-row folding seat are not defective. [Ex. 2: Tr. Excerpt re Munsell at pp. 48 and 112.] He also agreed that the fact that the second-row seat fold down is not defective. [*Id.*] Rather, Mr. Munsell testified the defect in this case is how the seats "don't play nicely together." [*Id.* at pp. 48-49.] He agreed there are no fractured parts

5

in the driver's seat. [*Id.* at p. 61.] He also agreed that the 2003 Matrix complied with all Federal Motor Vehicle Safety Standards. [*Id.* at pp. 64-65.]

### A. Mr. Munsell is not qualified.

Mr. Munsell testified that he has not specialized in automotive engineering. [Ex. 2: Tr. Excerpt re Munsell at p. 52.] In fact, he has only run two or three or four crash tests in his entire 32-year career. [*Id.*] He's only run four or five sled tests. [*Id.*] He admitted there are other engineers who focus and specialize more specifically on automotive engineering than he does. [*Id.* at pp. 52-53.] He has never been employed by an automobile manufacturer. [*Id.* at 53.] He has never designed a component that went into a production vehicle. [*Id.*]

He has never published a technical paper for the Society of Automotive Engineers, given a presentation at one of their meetings, or even attended one of their meetings. [Ex. 2: Tr. Excerpt re Munsell at p. 54.] He has never published a paper on automotive seats. [*Id.*]

Mr. Munsell is a jack-of-all-trades, not an automotive expert. He has consulted on or testified about a plethora of products including (1) handguns, (2) cranes, (3) printing presses, (4) degassing systems, (5) industrial equipment, (6) oilfield equipment, (7) hunting tree stands, (8) medical devices, (9) bunk beds, (10) office chairs, (11) restaurant chairs, (12) baby cribs, (13) child restraints, (14) folding day beds, (15) coffee pots, (16) television cable power inverters, (17) fillet knives, (18) bicycles, (19) space heaters, (20) slipperiness of a floor, (21) pontoon boat railings, (22) jet skis, (23) surf boards, (24) production lines for hot dogs and lunch meat, (25) tornado shelters, (26) exercise equipment, (27)

motorcycles, (28) all-terrain vehicles, (29) nail guns, (30) circular saws, (31) table saws, (32) lawn mowers, (33) weed eaters, (34) commercial deep fryers, (35) loading docks or loading dock levelers, (36) blood plasma separator at a pig processing plant, and (37) the controls on asphalt pavers. [Ex. 2: Tr. Excerpt re Munsell at p. 55-60.]

An expert's qualifications do not turn on his "general" qualifications, but rather, his qualifications to offer opinions about the particular issues presented in the case. *Graves v. Mazda Motor Corp.*, 675 F. Supp. 2d 1082, 1092 (W.D. Okla. 2009), *aff'd*, 405 F. App'x 296 (10th Cir. 2010). Mr. Munsell lacks the qualifications to render automotive defect opinions regarding the 2003 Toyota Matrix. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). He is not qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). His opinions, therefore, are insufficient to establish an alleged defect in the Toyota Matrix.

**B.   Mr. Munsell did not do the work necessary in this case to offer an opinion of a defect in the Matrix.**

Mr. Munsell testified that to develop his opinions in this case, he took measurements, took photographs, looked at some crash tests, looked at some engineering texts, looked at technical papers, and did some calculations. [Ex. 2: Tr. Excerpt re Munsell at pp. 22-26.] He has not done any dynamic crash or sled tests, or any static, or quasi static testing to support his opinions in this case. [*Id.* at pp. 74-75.] Thus, he didn't do a seat pull test to see how strong the seat is. [*Id.* at 75.] Mr. Munsell admits he could have conducted

7

a crash test impacting a second-row seat into a driver's seat to determine if a headrest could really create the damage seen on the subject seat. [*Id.* at pp. 77-78.]

In addition to not doing any testing, Mr. Munsell did not evaluate the seat belts in the Matrix. [Ex. 2: Tr. Excerpt re Munsell at p. 79.] He has not carefully studied the accident reconstructions done in this case. [*Id.* at pp. 79-80.] He made no assumptions about where Plaintiff's seat was positioned in the vehicle at the time of the accident. [*Id.* at p. 80.] He doesn't recall what Mr. Murphy's testimony was regarding where the seat was positioned in the vehicle. [*Id.*] He didn't analyze Plaintiff's movements during the crash. [*Id.*] He had no opinion regarding impact speed or peak Gs experienced in the crash. [*Id.*] He hasn't made any crush measurements on the vehicle and he hasn't studied the pulse of the subject crash. [*Id.* at p. 82.] He doesn't know what the impact speed was when the Matrix slammed into the railroad crossing pole while traveling in reverse. [*Id.* at p. 83.] Mr. Munsell does not know the strength measurement for the subject seatback. [*Id.* at 84-85.]

Consequently, in Mr. Munsell's jack-of-all-trades vernacular, he testified that the driver's and left-rear seats "don't play nicely" with each other. [Ex. 2: Tr. Excerpt re Munsell at pp. 48-49.] That is not an opinion from a qualified forensic engineer. It is not a reliable opinion regarding an alleged defect. Rather, it is a scientifically unreliable opinion, unsupported by any testing or rigorous analysis. It is a classic example of the inadmissible *ipse dixit* of an expert, as it is only so because Mr. Munsell proclaims it to be. This is improper opinion testimony. Fed. R. Evid. 702. Those opinions are insufficient to submit

Plaintiff's case to the jury. Defendants respectfully submit that this Court should grant Defendants judgment as a matter of law.

### C. At trial, Mr. Munsell did not offer scientifically reliable testimony to support the finding of a defect.

Mr. Munsell opined that no matter how severe the impact, there should be no contact, which is an impossible standard. [Ex. 2: Tr. Excerpt re Munsell at pp. 83-84.] Mr. Munsell never provided any design criteria that would make the combination of the driver's seat/folding rear seat not defective. In other words, there is no criteria to design to.

At trial, Mr. Munsell testified that, although he performed no testing whatsoever, the Matrix is defective because the seats interacted in this severe crash causing the driver's seat back to lose 50% of its strength. He so opines without acknowledging the severity of the accident at issue. As he testified at trial, the speed of the crash at issue doesn't matter to Mr. Munsell's defect opinions. [*Id.* at p. 83, ln. 6 – 17.] Mr. Munsell's opinion would be the same even if the impact speed was 50 mph or even 100 mph. [*Id.* at p. 83, ln. 18 – p. 84, ln. 9.] Mr. Munsell's opinion is absolutely untested and unsupported. He has no engineering basis for his opinion that the Matrix should have been designed to be essentially injury proof in a crash involving such excessive impact speeds. He cited no engineering standards, specifications, governmental entity, consumer organization or anyone who agreed with his criteria. His opinion has not been subject to peer review, and is scientifically unreliable.

Under the theory of manufacturers' products liability, the plaintiff "must prove that the product was the cause of the injury; the mere possibility that it might have caused the

9

injury is not enough." *Kirkland v. General Motors Corp.*, 521 P.2d 1353, 1363 (Okla. 1974). To hold otherwise would make manufacturers "absolute insurers" of their products, a result expressly rejected by the Oklahoma Supreme Court in *Kirkland. Id.* at 1366; *see also Moss v. Polyco, Inc.*, 522 P.2d 622, 627 (Okla. 1974) (Oklahoma manufacturers' products liability "does not make the manufacturer or retailer an insurer, nor does it impose absolute liability."). For example, the Oklahoma Supreme Court rejected a plaintiff's attempt to hold a cigarette and sofa manufacturer liable for injuries he sustained when his lit cigarette ignited the sofa after he fell asleep, ruling instead, "There are no standards by which a cigarette manufacturer is required to make a cigarette that if left unattended will not burn. Nor is a sofa maker required to manufacture a flame retardant product." *Lamke v. Futorian Corp.*, 709 P.2d 684, 687 (Okla. 1985) (affirming dismissal of plaintiff's action).

"**The doctrine of manufacturers' products liability cannot be said to require a manufacturer to build a fail-safe product.**" *Stuckey v. Young Expl. Co.*, 586 P.2d 726, 731 (Okla. 1987) (emphasis added). And yet, that is exactly what Mr. Munsell is demanding, an automobile seat design that would be injury proof no matter the impact speed at issue. The level of perfection demanded by Mr. Munsell's opinion is not required under Oklahoma law. "**[A] manufacturer is under no duty to make products absolutely safe from every conceivable potential injury.**" *Kelley By & Through Kelley v. Rival Mfg. Co.*, 704 F. Supp. 1039, 1044 (W.D. Okla. 1989) (granting summary judgment in products liability action against crock pot manufacturer where unsupervised child sustained burns when a crock pot fell off a table). (emphasis added) (citations omitted). "**This [level of**

perfection] would require that manufacturers ensure against all accidental injuries in which their products were involved even if the product was not defective." *Id.* at 1046.; *see also AlNahhas v. Robert Bosch Tool Corp.*, 706 Fed. Appx. 920, 930 (10th Cir. 2017) (Oklahoma law does not "require a manufacturer to build a fail-safe product") (quoting *Stuckey*, 586 P.2d at 731.

Mr. Munsell's opinions are not realistic. Manufacturers are not required to design products that are absolutely safe from every conceivable potential injury. It would be impossible for any automotive engineer to design a fail-safe vehicle that could protect in every scenario against the types of forces Mr. Munsell demands. Mr. Munsell didn't identify any comparable vehicles with any different design criteria that would have made a difference to Plaintiff in the subject crash.

Consequently, Mr. Munsell's opinions are not reliable. They are insufficient to support a jury verdict. Defendants respectfully submit that Defendants should be granted judgment as a matter law.

II.     **Absent expert opinion testimony that Plaintiff's injury was caused by the alleged defect, Plaintiff's products liability claim cannot go to the jury.**

Plaintiff cannot prevail in this products liability action absent expert opinion testimony that his injuries were directly caused by the alleged defect. OUJI-Civ. No. 12.1; *see also Kirkland*, 521 P.2d at 1363; *Allenberg v. Bentley Hedges Travel Serv., Inc.*, 22 P.3d 223, 227 (Okla. 2001). In this trial, Plaintiff had the burden of proving "that the product was the cause of the injury; the mere possibility that it might have caused the injury is not enough." *Kirkland*, 521 P.2d at 1363. To hold otherwise would make manufacturers

11

"absolute insurers" of their products, a result expressly rejected by the Oklahoma Supreme Court in *Kirkland. Id.* at 1366. The burden of proof regarding causation is on Plaintiff. *Id.* at 1363. However, a defense to a products liability action is that the alleged defect did not cause the injury. *Id.*; *see also Fields v. Volkswagen of Am., Inc.*, 555 P.2d 48, 56 (Okla. 1976). If "**causation is missing . . . the plaintiff may not recover.**" *Kirkland*, 521 P.2d at 1366 (emphasis added); *see also Fields*, 555 P.2d at 56-57. The mere fact Plaintiff was injured in a crash involving the Toyota Matrix does not create a presumption of defectiveness, nor does it shift the burden of proof to Defendants to prove the absence of a defect. *Kirkland*, 1974 OK 52, ¶ 28, 521 P.2d at 1363.

Absent expert testimony connecting the alleged defect to the Plaintiff's injury, Plaintiff cannot prove causation. "To establish causation, Plaintiff must prove that his injury was caused, not necessarily by the negligence of Defendant, but by reason of a defect built in and existing at the time of his injury." *Alexander v. Smith & Nephew, P.L.C.*, 90 F. Supp. 2d 1225, 1232 (N.D. Okla. 2000). In *Alexander*, the plaintiff sued a manufacturer for injuries allegedly sustained from the implantation of a medical device. The court, applying Oklahoma law, found that the plaintiff's products liability claim failed because the plaintiff had put forward no expert evidence on the issue of causation. *Id.* at 1232. The trial court excluded the testimony of the plaintiff's expert witness on the issue of medical causation. *Id.* at 1229-32. The *Alexander* court determined that without expert witness testimony, the plaintiff lacked any evidence to prove causation. *Id.* at 1232 ("The Oklahoma Supreme Court has frequently found expert testimony necessary to establish

medical causation."). Consequently, the plaintiff's product liability claim could not go forward absent expert testimony on causation. *Id.* at 1236.

Expert witness testimony is the best way to establish causation and assist the fact finder. *Nash v. General Motors Corp.*, 153 P.3d 73, 75 (Okla. Civ. App. 2007). Without such evidence, Plaintiff lacks proof to take her allegations to the jury. Otherwise the jury would be left to speculate about what caused Mr. Hicks' injuries. A jury cannot be left to speculate on complex issues of causation. "Such speculation would be error because 'the mere possibility that a defect caused the injury is not sufficient.'" *Id.* (quoting *Dutsch v. Sea Ray Boats, Inc.*, 845 P.2d 187, 191 (Okla. 1992)).

In *Nash*, the Oklahoma Court of Civil Appeals affirmed the trial court's order granting the automobile manufacturers' motion for summary judgment where the plaintiffs lacked expert biomechanic opinion testimony proving that the alleged defect caused or enhanced Ms. Nash's injuries. *Nash*, 153 P.3d at 76. There, Ms. Nash received injuries when another vehicle ran a stop sign and collided with their pickup manufactured by General Motors. *Id.* at 74. Id. The plaintiffs filed a manufacturers' products liability action against GM alleging that a defect in the seat belt system enhanced Ms. Nash's injuries. *Id.* at 74. The plaintiffs attempted to satisfy their burden of proving causation by combining the opinion of their liability expert that an alleged defect existed in the vehicle with opinions by medical experts that Ms. Nash was injured in the accident. *Id.* at 75. That evidence was not sufficient as a matter of law, however, as none of the plaintiffs' experts opined that there was a causal link between the alleged defect and Ms. Nash's injuries. *Id.*

at 76. The plaintiffs did not have a biomechanic expert who could testify that the alleged defect enhanced Ms. Nash's injuries. *Id.*

Affirming summary judgment for General Motors, the Oklahoma Court of Civil Appeal ruled that the plaintiffs "failed to produce any expert or other evidence upon which a fact finder could conclude a manufacturing defect caused or increased the severity of Ms. Nash's injuries." *Id.* at 76. Ruling that the trial court properly granted summary judgment in favor of the automobile manufacturer, the Court held that "[e]ven assuming all of Plaintiffs' evidence was true and after indulging every reasonable inference in favor of Plaintiffs, no evidence in the record before us causally connected Ms. Nash's injuries to a defect in the seat belts nor was there any evidence showing the severity of her injuries was increased as a result of such a defect." *Id.*

Furthermore, the doctrine of *res ipsa loquitur*, which allows an inference of negligence from the mere fact that an accident happened, has never been applied in Oklahoma with respect to the issue of causation in a manufacturers' products liability case. *Dutsch v. Sea Ray Boats*, 1992 OK 155, ¶ 13, 845 P.2d 187. The Court in *Dutsch* emphasized:

> A manufacturer's products liability plaintiff need not exclude all other possible conclusions. However, the mere possibility that a defect caused the injury is not sufficient.

*Dutsch*, 1992 OK 155, ¶ 15, 845 P.2d at 191.

Here, Plaintiff has presented his case-in-chief and he failed to present any evidence that the alleged defect caused his injury. Munsell testified at trial that the subject vehicle is defective because when the folding second row seat is folded down, the headrest of the

14

second row seat "comes right even with an important structural member of the front seat" and at "the early part of this accident, at the beginning phase of the accident, this headrest punches the back of this seat" which "deform[s] the structure on the right side of the seat. It twists it and buckles it" which "drops the strength on that side of the seat by 50 percent." [Ex. 2: Tr. Excerpt re Munsell at pp. 7-8.]

However, Plaintiff's biomechanic expert, Dr. Ziejewski, failed to establish a causal connection between the alleged defect and Plaintiff's injuries.[2] To the contrary, he simply described how he believe Plaintiff's spinal fracture occurred in the crash, but failed to connect to Munsell's alleged defective condition (a loss of strength in the seat). The testimony at trial from Ziejewski indicated that, based on his surrogate work, that Plaintiff would have contacted the area where he sustained absent any deformation or movement of the seat.

## CONCLUSION

Even after indulging every reasonable inference in favor of Plaintiff, there was no evidence admitted at trial causally connecting Plaintiffs' injuries to a defect in the Toyota Matrix. For these reasons, Defendants are entitled to judgment as a matter of law.

---

[2] Mr. Munsell testified that he was not expressing any opinions in this case about causation or the mechanism for Plaintiff's injuries. [Ex. 2: Tr. Excerpt re Munsell at p. 72.]

Respectfully submitted,

*s/Andrew L. Richardson*
Mary Quinn Cooper, OBA #11966
Andrew L. Richardson, OBA #12327
MCAFEE & TAFT, P.C.
Williams Center Tower II
Two West Second Street, Suite 1100
Tulsa, Oklahoma 74103
918/587-0000
918/599-9317 (FAX)
maryquinn.cooper@mcafeetaft.com
andrew.richardson@mcafeetaft.com

David P. Stone – *Pro Hac Vice*
Texas State Bar No. 19289060
Suzanne H. Swaner – *Pro Hac Vice*
Texas State Bar No. 90001631
NELSON MULLINS RILEY &
SCARBOROUGH LLP
5830 Granite Parkway, Suite 1000
Plano, Texas 75024
469/484-6100
469/828-7217 (FAX)
david.stone@nelsonmullins.com
suzanne.swaner@nelsonmullins.com
**Attorneys for Defendants**

## CERTIFICATE OF SERVICE

I hereby certified that on the 20th day of January, 2023, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing. The Clerk of the Court will transmit a notice of electronic filing to the ECF registrants based on the records currently on file.

Richard L. Denney
Lydia JoAnn Barrett
Jason E. Robinson
rdenney@dennbarr.com
lbarrett@dennbarr.com
jrobinson@dennbarr.com
***Attorneys for Plaintiff***

Adam W. Christensen
Christensen Law PLLC
3401 NW 63rd Street, Suite 611
Oklahoma City, OK 73116
adam@christensen.law

s/Andrew L. Richardson